

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TINA ASMUS and KEVIN ASMUS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 09-cv-2571 |
| MAC'S CONVENIENCE STORES, LLC ) | |
| d/b/a CIRCLE K, CIRCLE K MIDWEST, ) | Judge John W. Darrah |
| and CIRCLE K FOOD STORES; ) | |
| CIRCLE K STORES, INC.; ) | |
| EQUILON ENTERPRISES LLC ) | |
| d/b/a SHELL OIL PRODUCTS; and ) | |
| STAY GREEN, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Tina and Kevin Asmus, brought this action to recover for injuries Tina sustained as a result of slipping on some ice in the parking lot of a Circle K convenience store in Mokena, Illinois. They sued the property owner, Equilon Enterprises, LLC ("Equilon"); the store owner, Mac's Convenience Stores, LLC ("Mac's"); and a snow-removal company, Stay Green, Inc. ("Stay Green"). Equilon and Mac's filed a joint motion for summary judgment. Stay Green filed its own motion, adopting portions of Equilon and Mac's motion. Briefing was consolidated, and both motions are now ripe for ruling.

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which

the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner required by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

None of the parties in this case have complied with Local Rule 56.1. Local Rule 56.1(a) provides that the movant's statement of material facts should set forth no more than 80 short, numbered paragraphs. The party opposing the motion for summary judgment shall file a response to each numbered paragraph and may also provide no more than 40 separately numbered statements of additional facts. *See* Local Rule 56.1(b). Mac's and Equilon submitted a joint statement of material facts, which was adopted by Stay Green. Many of the numbered paragraphs contain as many as 19 lettered subparts, bringing the total number of paragraphs well above 80. Plaintiffs take the same approach, submitting more than 40 paragraphs, including subparts. More importantly, none of the parties filed any response to their opponents' statements of fact. In the interest of efficiency, the failure to comply with the paragraph restrictions will be excused and all relevant facts will be considered. However, because those facts are unopposed, they are deemed admitted, where properly asserted.

Plaintiffs are citizens of Pennsylvania. Def. SOF ¶ 1.[1] Mac's is a Delaware corporation with executive headquarters in Indiana. Def. SOF ¶ 2. Equilon is a Delaware corporation with executive headquarters in Texas. Def. SOF ¶ 3. Stay Green is an Illinois corporation with its principal place of business in Frankfort, Illinois. Def. SOF ¶ 4. The alleged injury that forms the basis of this case occurred in Illinois. Def. SOF ¶ 13. Subject-matter jurisdiction over this action is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332. Def. SOF ¶ 10. The parties agree that Illinois supplies the rule of law.

Plaintiffs allege that Tina Asmus broke her leg after slipping on some ice in the parking lot of a Circle K/Shell Gas Station located in Mokena, Illinois. Def. SOF ¶ 8. Tina and her family stopped at the Circle K on Christmas Day 2008 during a trip to visit family in Iowa. Def. SOF ¶¶ 13.a-b. The temperature was cold, but it was not snowing. Def. SOF ¶ 13.c. Tina saw snow and ice in the parking lot next to her vehicle. Def. SOF ¶ 13.d.

Kevin parked near the east door to the gas station. Def. SOF ¶ 13.e. Tina exited the passenger side of her vehicle and removed her child from the passenger side behind her. Def. SOF ¶ 13.f. She then closed the car door and walked in front of the vehicle and onto the sidewalk with her family following behind her. Def. SOF ¶ 13.f. The family used the restrooms inside the store and purchased some snacks and drinks. Def. SOF ¶ 13.g. They left through the same door through which they had entered and walked

---

[1] As explained above, Stay Green adopted the joint statement of facts submitted by Mac's and Equilon, which is cited throughout this opinion as "Def. SOF ¶ __." Plaintiffs' statement of additional facts is cited as "Pl. SOAF ¶ __."

3

toward the parking lot. Def. SOF ¶¶ 13.h, j. Tina, who was carrying her youngest child, saw melted snow and ice in the parking lot as she exited the store. Def. SOF ¶¶ 13.h-i. After taking two or three steps in the parking lot, she fell. Def. SOF ¶ j. Kevin was behind her and saw his wife fall. Def. SOF ¶¶ 15.i-j.

Tina never saw any snow or ice in the area where she fell before the incident, but she believes she slipped on black ice. Def. SOF ¶¶ 13.k-l. She does not know the source of the liquid or ice on which she slipped. Def. SOF ¶ 13.p. Kevin had noticed water and slush in the parking lot and on the sidewalk as he walked into the store and saw a trail of liquid that started at the curb of the walkway and led to the spot where his wife fell. Def. SOF ¶¶ 15.f, o. The pavement slopes from the door of the store to the parking lot. Def. SOF ¶ 15.n. Plaintiffs never saw a snow plow or observed any shoveling or salting while they were in the parking lot. Def. SOF ¶¶ 13.m, 15.c.

Miranda Rhoads was working as a Circle K cashier at the time of the incident. Def. SOF ¶ 19.a. She did not witness Tina's fall, but she spoke with Plaintiffs after the incident and completed an incident report. Def. SOF ¶¶ 19.d-h. Rhoads also took photographs of the area. Def. SOF ¶ 19.i. The photographs show slick, wet, snowy, and icy conditions at or near the site of the fall. Pl. SOAF ¶ 20. Rhoads saw black ice where Tina fell; she does not remember whether she saw any salt in the parking lot. Def. SOF ¶¶ 19.k-l. Rhoads did not notice any slippery conditions in the parking lot when she arrived at work that day, and no one made any complaints about slippery conditions in the parking lot during her shift. Def. SOF ¶¶ 19.p-q.

Michael Caddell is the Market Manager for Mac's; he is responsible for overseeing the operation of eight stores, including the Circle K at which Tina fell. Def. SOF ¶¶ 17.a-d. As part of his responsibilities, Caddell signed a contract between Mac's and Stay Green, by which Stay Green agreed to plow the lots and keep the walkways clear of snow and ice in certain conditions. Def. SOF ¶ 17.e. The contract required Stay Green to plow the lot whenever there were more than two inches of accumulation on the property and to shovel the sidewalk and salt the lot anytime there was freezing accumulation. Def. SOF ¶¶ 25.l-m. Notwithstanding the two-inch requirement, Stay Green was usually asked to plow when accumulations were an inch or more. Pl. SOAF ¶ 18.a. Stay Green had plowed the lot twelve times in December prior to the incident. Pl. SOAF ¶ 18.h. Michael Boyer, owner of Stay Green, plowed and salted the lot on December 24, 2008, charging Mac's for a "half plow" because accumulation was less than two inches. Def. SOF ¶ 19.o. He did not recall seeing any black ice in the lot. Def. SOF ¶ 19.p. No one at Stay Green worked on Christmas Day – the day of the incident. Pl. SOAF ¶ 18.f. No evidence has been presented to show that it snowed between the time Stay Green plowed on December 24 and the time of Tina's accident.

Caddell was also responsible for ensuring that employees and outside companies followed guidelines set forth in an "Associate Guide Book and Expectation Form" ("Guidebook"). Def. SOF ¶ 17.f. Employees were instructed to "[r]emove litter, snow, oil spills, etc. immediately from walkways, ramps, parking areas, and fueling areas" and to report unsafe conditions to management to avoid accidents. Pl. SOAF ¶¶ 2.a-b. Mac's

5

also posted policies and guidelines on its intranet. Pl. SOAF ¶¶ 3, 5, 7. Those guidelines provide that sidewalks were to be kept clear of snow and ice, that salt was to be distributed onto customer areas, and that store managers should complete a daily "property walk." Pl. SOAF ¶¶ 4, 6. Caddell testified that employees were responsible for the walkways and areas around the gas pumps, and Stay Green was responsible for the parking lot. Def. SOF ¶¶ 17.g-i. Employees were not prohibited from applying de-icer to the parking lot, however; and they sometimes salted or shoveled the walks or lots. Pl. SOAF ¶¶ 14.b, 18.i.

Plaintiffs allege that the ice on which Tina slipped was an unnatural accumulation and that her injuries were caused by one or more negligent acts or omissions on the part of Mac's, Equilon, and Stay Green. Def. SOF ¶ 8.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not

sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

All Defendants argue that Plaintiffs cannot identify any evidence to show that the black ice upon which she slipped was anything other than a natural accumulation. Plaintiffs respond by arguing (1) that a jury could infer that the accumulation of ice was unnatural and (2) that the issue is irrelevant because Defendants contractually undertook the responsibility of removing *all* accumulations, both natural and unnatural. As discussed below, neither argument is persuasive.

In the absence of a contractual obligation, there is no general duty of a property owner in Illinois to remove natural accumulations of snow or ice from areas used by

7

invitees.[2] *Ciciora v. CCAA, Inc.*, 581 F.3d 480, 482 (7th Cir. 2009) (*Ciciora*) (citations omitted). Property owners may, however, be liable for *unnatural* accumulations of ice or snow caused by a negligent, voluntary undertaking to remove natural accumulation. *Id.* The plaintiff has the burden of showing that her injury was the result of an unnatural accumulation caused by the defendant. *Webb v. Morgan*, 531 N.E.2d 36, 39 (Ill. App. Ct. 1988) (*Webb*). If a property owner does voluntarily undertake snow removal, its duty is not to remove all snow and ice but only to remove as much as reasonably possible. *Crane v. Triangle Plaza, Inc.*, 591 N.E.2d 936, 940 (Ill. App. Ct. 1992) (*Crane*). If a property owner hires a snow-removal contractor to clear the snow, the contractor merely owes patrons a duty to "abstain from negligence" in performing its job obligations. *Wells v. Great Atl. & Pac. Tea Co.*, 525 N.E.2d 1127, 1132 (Ill. App. Ct. 1988) (*Wells*). The "[m]ere removal of snow, which leaves a natural accumulation of ice on the surface, does not of itself constitute negligence." *Rose v. United States*, 929 F. Supp. 305, 308 (N.D. Ill. 1996) (citing *Webb*, 531 N.E.2d at 39).

Here, Plaintiffs have offered no evidence that the ice on which Tina slipped was an unnatural accumulation. The incident happened on a cold winter day. The lot had been plowed the previous day, and water and slush were present in the lot at the time of the accident. Tina does not know the source of the liquid or ice on which she slipped. Although reasonable inferences drawn from Kevin's testimony suggest that melted snow or ice from the sidewalk area by the door may have run into the parking lot where it

---

[2] It appears from the parties' briefs that Equilon owns the property at issue and leases it to Mac's. Because Plaintiffs have not demonstrated a breach of duty by *any* of the Defendants, the issue of ownership or control of the property in question is immaterial for purposes of resolving Defendants' motions for summary judgment.

8

refroze, Plaintiffs have offered nothing beyond conjecture as to how a patch of black ice was the result of any negligent act or omission on the part of any of the Defendants.

Plaintiffs argue that the fact that Stay Green had plowed the lot several times during the month before the accident "may mean that the glare ice on which Tina Asmus fell was an unnatural accumulation/condition aggravated by the Defendants" and that a jury could view pictures of snow piles and slick conditions at the store and infer that Stay Green "breached its duty of reasonable care in removing snow and/or ice" or that Mac's "was unreasonable and negligent in attempting to delegate some of its removal duties to Stay Green, yet leaving smaller accumulations untreated." Pl. Opp'n Br. 3, 10. Plaintiffs also argue that the area where Tina fell was near a handicapped-access ramp that "could have led to water thawing then refreezing on the lot." *Id.* 9.

These speculative arguments, unsupported by facts in the record or expert testimony, are insufficient to withstand summary judgment on the issue of whether Tina's injury was caused by an unnatural accumulation of snow or ice. More is required. *See, e.g., Webb*, 531 N.E.2d at 39-40 (affirming jury verdict for plaintiff where experts testified that grade of lot and placement of snow would lead to unnatural accumulation at the spot where plaintiff slipped and evidence showed that snow was plowed into large piles at top of grade, that no salt or cinders were spread in the lot, and that defendant knew about the hazardous accumulation); *Fitz Simmons v. Nat'l Tea Co.*, 173 N.E.2d 534, 538, 541 (Ill. App. Ct. 1961) (affirming jury verdict where defendant admitted that he plowed snow toward high end of parking lot and that melting snow froze two inches thick in area where plaintiff fell).

9

Indeed, Illinois appellate courts have affirmed summary judgments in favor of defendants when plaintiffs have failed to show specific evidence of a causal link between a defendant's actions and an unnatural accumulation. *See, e.g., Madeo v. Tri-Land Props., Inc.*, 606 N.E.2d 701, 704-05 (Ill. App. Ct. 1992) (affirming grant of summary judgment and holding that "[o]ther than stating, in essence, that 'water flows downhill,' plaintiff provided no evidence as to how the grade in the lot could have caused water from the snow bank to reach the spot where plaintiff slipped"); *Crane*, 591 N.E.2d at 940 (affirming summary judgment because plaintiff failed to offer anything more than "complete speculation" as to "nexus between the snow pile on the periphery of the parking lot and the ice" upon which she fell).

Like the plaintiffs in *Madeo* and *Crane*, Plaintiffs' speculative theories are insufficient to meet their burden of proving that Tina's fall was caused by an unnatural accumulation of snow and ice attributable to any of the Defendants. The only evidence regarding the source of the ice is Kevin's testimony that he saw a trail of liquid from the curb to the spot where his wife fell. There is no evidence connecting that trail to any source beyond the sidewalk, much less to any negligent act or omission on the part of any of the Defendants.

Plaintiffs also argue that because Defendants undertook a duty to clear all snow and ice accumulations, the question of whether the accumulation was unnatural is immaterial. They cite a number of Illinois cases for the proposition that a party can voluntarily assume a duty where no duty would otherwise exist. Those cases are inapposite.

Plaintiffs rely most heavily on *Schoondyke v. Heil, Heil, Smart & Golee, Inc.*, 411 N.E.2d 1168 (Ill. App. Ct. 1980) (*Schoondyke*). The plaintiff in that case slipped on some snow in the driveway of her parents' condominium. *Id.* at 1170. She sued the condominium association for negligent breach of a contractual duty to remove the snow, which had fallen in the morning and still remained in the evening when she returned. *Id.* The plaintiff's parents had entered into an agreement with the association, in which the association agreed to perform snow removal; and her parents' monthly assessments included a snow-removal fee. *Id.* at 1170-71. The court held that this contractual obligation created liability to the plaintiff even though she did not own the condominium unit because it was foreseeable that the association's failure to perform its contractual obligation to clear snow could cause harm to a non-owner resident. *Id.* at 1173.

Plaintiffs argue that the instant case presents the same situation because Mac's employees were supposed to follow the Guidebook's instruction to remove snow from, and distribute salt to, parking areas. However, a list of "guidelines" for employees is not a contract between a unit owner and a condo association. Plaintiffs have presented no evidence of any contractual obligation that could create a duty to her as a foreseeable plaintiff. The only evidence of a contract in this case is a snow-removal contract between Mac's and Stay Green, which simply provides that the parking lot "will be plowed any time there is 2" accumulation" and that the lot "will be salted any time there is freezing

accumulation."[3] In contrast to *Schoondyke*, there is no evidence here to show that Mac's or Stay Green expressly contracted with anyone to remove all snow and ice from the lot. *Contra Eichler v. Plitt Theatres, Inc.*, 521 N.E.2d 1196, 1198 (Ill. App. Ct. 1988) (*Eichler*) (finding assumption of obligation because of express agreement to remove "all snow and ice"). Furthermore, property managers do not undertake a duty to plow snow or ice from their property merely by contracting with a snow-removal service. *Wells*, 525 N.E.2d at 1131-32.

For similar reasons, Plaintiffs' reliance on *Tressler v. Windfield Village Cooperative*, 481 N.E.2d 75 (Ill. App. Ct. 1985) (*Tressler*), is also misplaced. In that case, a tenant brought suit against her landlord for negligent failure to comply with a covenant to remove snow from her walkway. *Id.* at 75. The plaintiff had entered into a written lease with the defendant, who, at the time of signing, provided her with a handbook stating that he would arrange for snow removal. *Id.* The court held that the landlord had a duty to remove snow but that a question of fact remained as to whether the landlord's delay in removing the snow was reasonable. *Id.* at 77. Importantly, the defendant in *Tressler* (a landlord) had an express contractual obligation to the plaintiff (his tenant). No such contractual relationship exists in the instant case.

Plaintiffs also cite *Eichler*, in which a patron slipped and fell on some ice in a movie theater parking lot. 521 N.E.2d 1196, 1198. She sued the owner of the parking

---

[3] Defendants also identify a lease agreement between Equilon and Mac's, which provides that Mac's shall operate its business with reasonable care for the safety of persons and property and that Mac's shall maintain the facilities in good condition. Def. SOF ¶ 29. None of the parties have identified any provisions in the lease agreement specific to snow removal.

12

lot, the theater (which leased the lot from the property owner), and a landscaping company that had contracted with the property owner to perform snow plowing and snow removal. *Id.* Although she acknowledged that there was no common-law duty to remove naturally accumulating snow and ice, the plaintiff argued that the defendants had assumed such a liability by contract. *Id.* Specifically, an easement agreement between the property owner and owners of adjacent property provided that each party's obligation to maintain its parking lot includes "the prompt removal of all . . . snow and ice." *Id.* The theater's lease with the property owner provided that the theater would assume all rights and obligations under the easement agreement. *Id.*

The court found that summary judgment was improperly entered in favor of the property owner and its lessee because the easement agreement constituted a contractual assumption of the obligation to remove all snow and ice such that the other party to the agreement reasonably relied on that undertaking as being necessary for the protection of third parties. *Id.* at 1200-01 (citing Restatement (Second) of Torts § 324A (1965)). Although the easement agreement could not be construed as an agreement to remove "every bit of snow and ice," the agreement was construed to require the property owner to remove all that is reasonably practical. *Id.* at 1201-02. On the other hand, the court held that summary judgment was appropriate as to the landscaping company because it had only specifically contracted to perform snow plowing and snow removal – not ice removal. *Id.* at 1201.

Although *Eichler* appears quite similar to the instant case at first glance, the existence of the easement agreement in *Eichler* is a material distinction. There is no

evidence of such a contractual obligation in this case. Plaintiffs' attempts to elevate the legal significance of Mac's Guidebook to that of a formal contract are unpersuasive. There is no evidence that any of the Defendants in this case saddled themselves with any higher duty to Plaintiffs than that imposed by Illinois common law. And, as discussed above, there is no evidence that any common-law duty was breached by any of the Defendants.

Tina's fall was unfortunate, but the fact that it occurred at the Circle K does not automatically impose liability on any of the Defendants in this case. It is unrealistic to expect property owners to keep all areas free of snow or ice during winter months, and Illinois law does not require them to do so. *Ciciora*, 581 F.3d at 482. "The mere presence of snow and ice does not demonstrate negligence." *Id.* at 484 (quoting *Tressler*, 481 N.E.2d at 77). There is no evidence that any of the Defendants in this case breached any contractual or common law duty to Plaintiffs in this case. Accordingly, judgment must be entered in favor of Defendants.

## CONCLUSION

For the reasons discussed above, Defendants' motions for summary judgment are granted.

Date: February 11, 2011

JOHN W. DARRAH
United States District Court Judge